UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHERMAN B. RONES,
    Plaintiff,

v.                                                                                                 Case No. 19-C-0246

BRYAN BURKHEAD, et al.,
    Defendants.

## ORDER

Plaintiff Sherman B. Rones, a Wisconsin state prisoner who is representing himself, filed a civil rights complaint under 42 U.S.C. § 1983. I allowed him to proceed on Eighth Amendment deliberate indifference to medical needs claims against defendants Bryan Burkhead, Brad Schlosstein, Angela Thompson, Dr. Dilip Tannan ("the state defendants"), and Dr. Adebola Ibirogba. Before me now is defendant Dr. Ibirogba's motion for summary judgment for failure to exhaust administrative remedies and the state defendants' motion for summary judgment, which also includes an exhaustion argument for defendants Thompson and Dr. Tannan. While plaintiff also appears to have filed a motion for summary judgment, ECF no. 64, his motion and supporting materials actually respond to the state defendants' motion for summary judgment, as the state defendants point out. *See* ECF no. 67 at 2. As such, I will treat his motion as a response to the state defendants' summary judgment motion instead of a unique and separate motion for summary judgment and deny it accordingly. Additionally, plaintiff filed a Motion to File Injury Photo(s) In Support of Claim and a Motion to Supplement Record of Plaintiff's Brief In Support of Summary Judgment, both of which I will deny for the reasons set forth below. I will also grant Dr. Adebola's motion for summary judgment on exhaustion grounds; grant

summary judgment in favor of Thompson and Dr. Tannen on exhaustion grounds; grant summary judgment in favor of Bryan Burkhead on the merits; and deny summary judgment as to defendant Brad Schlosstein.

**I.  PLAINTIFF'S MOTION TO FILE INJURY PHOTOS AND MOTION TO SUPPLEMENT THE RECORD**

Plaintiff filed a motion to submit photos of his head injury as evidence. This motion is unnecessary. The same photos were properly submitted by defendants as exhibits to the Declaration of Brad Schlosstein. *See* ECF no. 60-4 at 1-3. Accordingly, I will deny this motion.

Plaintiff also filed a motion to supplement his summary judgment record. In the motion, he states he is adding "new evidence". ECF no. 69 at 1. He then details events that took place between April and June 2020 that purport to demonstrate that defendant Angela Thompson sabotaged the interview and evaluation process for a knee-brace during a Special Needs Committee review. Plaintiff states that the injuries he sustained in the May 26, 2018 incident, which is the subject of this case, caused him to request the knee-brace.

Plaintiff's motion is denied. This "new evidence" is not relevant to the case at hand. While the request for the knee brace may have a connection to the injuries from May 26, the connection is too tenuous for me to consider this as evidence of Angela Thompson's alleged deliberate indifference. These new allegations took place two years after the events at issue here and are unrelated to Thompson's actions in 2018. If plaintiff believes that Thompson's actions in Spring of 2020 violated his constitutional rights, he will need

2

to bring these allegations in a separate suit. He cannot piggyback them on to the allegations in this case.

## II. SUMMARY JUDGMENT

### A. Facts of the Case

#### 1. The Parties

Plaintiff Sherman Rones is an inmate at Redgranite Correctional Institution ("RGCI"). ECF no. 59 at ¶ 1. At all times relevant the state defendants were employed at RCGI in the following capacity: Bryan Burkhead was a Correctional Officer; Brad Schlosstein was a Captain; Angela Thompson was the Health Services Unit ("HSU") Manager, and Dr. Dilip Tannen was a physician. *Id.* at ¶ 2. Defendant Dr. Adebola Ibirogba also worked as RGCI as a physician but was not directly employed by the State of Wisconsin. ECF no. 46 at 2.

#### 2. Plaintiff's Altercation and Related Injuries

Around 5:50 a.m. on May 26, 2018, plaintiff's cell mate, Joseph Hrbacek, allegedly assaulted plaintiff by throwing plaintiff down on to the floor and delivering "heavy blows upon his face." ECF no. 63-2 at 11, ECF no. 1 at 4.[1] As a result, plaintiff asserts that he suffered a concussion and blood spilled from his nose, mouth, and the back of his head. *Id.* According to plaintiff, throughout the morning, staff did not check on him. ECF no. 65 at 2.

---

[1] I may consider plaintiff's complaint as an affidavit for the purposes of summary judgment because in his complaint he declared under penalty of perjury that the facts within were true and correct. *See Beal v. Beller,* 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954-55 (7th Cir. 2011).

In his complaint, plaintiff asserts that defendant Burkhead knew about the fight and his injuries and did not inform defendant Schlosstein. ECF no.1 at 4. But plaintiff offers no additional evidence of Burkhead's involvement. At most, in his response brief, Plaintiff states that Burkhead's declaration (ECF no. 61) shows he was present at the Sergeant's station when Schlosstein and others were examining his injuries. ECF no. 65 at 1. However, plaintiff quotes from and cites to "line 8, Id. at p. 3 (3 of 4) Document 62." *Id.* The quotation and citation plaintiff gives are actually from C.O. David Johannes' declaration. Johannes is not a defendant. Regarding Burkhead's involvement, defendants state that Burkhead was working in plaintiff's housing unit on May 26, and, between 5:30 a.m. and 6:00 a.m., he was either in the main kitchen helping with breakfast or delivering unit meals. ECF no. 59 at ¶ 3. Burkhead's duties on plaintiff's unit that day did not include performing the type of security check that plaintiff describes in his complaint. *Id.* at ¶ 4.

According to defendants, Schlosstein did not become aware of plaintiff's injuries until the afternoon of May 26. Around 2:30 p.m., C.O. David Johannes was told by another inmate that plaintiff and his cellmate had fought that morning. *Id.* at ¶ 6. Upon learning this information, Johannes ordered plaintiff to report to the Sergeant's station. *Id.* at ¶ 7. Once plaintiff reported to the Sergeant's station, Johannes inspected plaintiff's injuries and noted a "contusion on the right side, back of Rones' head" and a "blood soaked bandaid covering up a small contusion behind Rones' right ear." *Id.* at ¶¶ 9-10. Plaintiff also had some "light swelling to the right side of [his] face." *Id.* at ¶ 11. Defendants assert that plaintiff told Johannes he received the injuries from falling out of his bunk bed. *Id.* at ¶ 12. When Johannes asked plaintiff if he reported the injuries, plaintiff said he did not, and when asked why not, plaintiff replied, "I don't know." *Id.* at ¶¶ 13, 15. Johannes offered

4

to take plaintiff to HSU for medical attention, but plaintiff, denying he had been in a fight, refused medical attention *Id.* at ¶ 16.

As a result of this interview, Schlosstein decided to place plaintiff in the restrictive housing unit (RHU) while he further investigated the fight. *Id.* at ¶ 17. At this point, prison staff took photos of plaintiff's injuries. The photos show the back of plaintiff's head, and there is a Band-Aid above his ear with a trickle of dried blood seeping out. ECF no. 60-4 at 1-3. While the photos were being taken, Schlosstein offered to get plaintiff medical attention, but Schlosstein said plaintiff refused. ECF no. 59 at ¶ 21. Schlosstein then took plaintiff to the RHU cell, noting that he walked on his own and had no trouble speaking. *Id.* at ¶ 22. According to Schlosstein, he "did not observe Rones displaying any symptoms that would have necessitated him to request an HSU evaluation on Rones' behalf." *Id.* at ¶ 23.

Plaintiff does not dispute that Schlosstein offered him medical attention. However, plaintiff insists that Schlosstein was required to take him to HSU because Schlosstein did not have the "jurisdiction or discretion" to decide whether to report plaintiff's head injury to HSU. ECF no. 65 at 2. In other words, plaintiff asserts that Schlosstein did not have the authority to make a judgment call about his health and the seriousness of his head injury and should have immediately reported it to medical professionals to make that determination. *Id.* Plaintiff also disputes Schlosstein's assertion that he was not displaying symptoms. Upon arriving at the RHU cell, plaintiff states that Schlosstein placed him "on

5

the floor with a mat [and plaintiff] could not maintain consciousness." *Id* at 3. In an affidavit[2] from his RHU cellmate, Jeffery J. Jackson, the cellmate states plaintiff

"laid down and slept through dinner. When he woke then next day, I could see a swollen lump on the right side of his head. He moved around unsteady as he did the first day he arrived. From the moment he walked in I was a little concerned for him, so I kept my eye on him. (So if something happen to him I was not going to let them say I did something to him)." ECF no. 32-1 at 6. Plaintiff states that he "did not eat for four days, lost memory of a day, and nursed bloody mouth." ECF no. 63-2 at 12. Plaintiff remained in RHU until June 7, 2018. ECF no. 59 at ¶ 25.

Plaintiff filed Inmate Complaint number RGCI-2018-13119, discussed in more detail below, on June 14, 2018, which was received by the Inmate Complaint Examiner's office on June 18, 2018. ECF no.63-1. On June 19, 2018, plaintiff asserts he "was forced" to fill out a Health Services Request ("HSR") form as a result of filing his inmate complaint. ECF no. 51 at ¶ 2; ECF no. 32-1 at 3. According to plaintiff, the purpose of filing the HSR was "to serve notice of ongoing pain, suffering, and need for delayed treatment to Angela Thompson, HSU, and Dr. Adebola Ibirogba." ECF no. 51 at ¶ 2. According to the form, it appears plaintiff had an appointment in HSU at 7:30 a.m. on June 19 and then filed the HSR immediately after. Plaintiff stated on the form that he "[a]sked to see HSU manager with my filed complaint in hand of recent of a concussion and injuries. Nurse immediately

---

[2] Plaintiff filed this affidavit when responding to the state defendants' motion to dismiss as a sanction and incorporated it by reference in a number of his materials responding to defendants' summary judgment motions. *See* ECF nos. 52, 65, 66. Because I may construe *pro se* plaintiffs' filings liberally, I will consider this affidavit. *See Grady v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)

6

talked about committee." ECF no. 32-1 at 3. The nurse's response, located at the bottom of the form stated, "Mr. Rones—as discussed yesterday you will need to submit an HSR to special needs committee [for] what you are requesting. Will forward to HSU." *Id.* The nurse also noted "scheduled with HSU." *Id.*

Plaintiff was examined by defendant Dr. Ibirogba on July 12, 2018. ECF no. 48 at ¶ 7. Plaintiff does not specify his issue with Dr. Ibirogba's examination, but states that the doctor "had 23 days prior to July 12, 2019 appointment, to appraised [*sic*] himself, yet ignored patients [*sic*] medical record." ECF no. 51 at ¶ 4. He then saw defendant Dr. Tannen on October 10, 2018. ECF no. 58 at 16. Again, the only thing plaintiff asserts against Dr. Tannen is that "Dr. Dilip K. Tannen, also had sufficient time to review plaintiff's medical record" prior to the examination." ECF no. 51 at ¶ 4.

Regarding Angela Thompson, in his complaint plaintiff alleges that she denied his lower bunk request in January 2019, which he requested due to lasting effects of the injuries he sustained on May 26, 2018. ECF no.1 at 4. He also generally asserts Thompson, as the HSU manager, had the "responsibility to advise her subordinates at scheduled appointments" to review records and file inmate complaints before appointments. ECF no. 51 at ¶ 3.

### 3. Plaintiff's Inmate Complaint

A review of plaintiff's inmate complaint history shows that he filed only one complaint related to the May 26, 2018 incident—RGCI-2018-13119. ECF no.63-1 at 1. Submitted on June 14, 2018 and received on June 18, 2018, the stated date of the incident was May 26, 2018 at approximately 5:50 a.m. *Id.* at 11. Where instructed to state the issue and request a remedy, plaintiff wrote "Rones recorded injuries were not reported

7

to HSU's Medical Staff or Doctor. Remedial action requested: That Examiner (Mr. Beier) review security recorded footage and retain for any discovery and/or appeal." *Id.* In the details section, plaintiff described the early morning fight with his cell mate. He then stated "[t]hat afternoon, I was called to Sgt.'s Desk with visible injuries, yet, still cuffed and taken to segregation. Then, stripped and placed in a double cell on the floor of Seg I C-3. With certainty he hoped the Unit Sergeant, arresting staff or Captain would advised [*sic*] HSU or Doctor for evaluation of visible injuries . . .. Staff was obligated to report the recorded injuries." *Id.* at 12.

The institution complaint examiner, N. Beier, reviewed the complaint on June 27, 2018 and dismissed it. *Id.* at 2-3. Schlosstein was interviewed and reported that he offered medical services to plaintiff several times, but plaintiff declined his offers. *Id.* Schlosstein also stated that plaintiff had not displayed any symptoms that would require him "to request an HSU appointment on the inmate's behalf." *Id.* at 2. Beier noted that the record demonstrated plaintiff never made any health services requests or made any other attempt to seek medical services prior to the filing of his complaint. *Id.* It was only after plaintiff filed his inmate complaint that he filed an HSR. *Id.* In rendering a decision, Beier stated "the issue of this complaint is reduced to one person's word against the other's. Lacking any other credible evidence, the ICE is placed in the position of having to speculate and that would be improper." *Id.* Beier further noted that if plaintiff required medical attention, he had access through submissions of HCRs or a request to see a nurse. *Id.* at 2-3.

Plaintiff appealed the decision on July 12, 2018. *Id.* at 15. In his appeal, plaintiff noted that Schlosstein acknowledged during the investigation of the inmate complaint that

8

he knew plaintiff was injured on May 26. *Id.* He also stated that that Schlosstein, because he had no medical training, did not have the discretion to decide whether to take him to HSU. *Id.* Because of the nature of the injury, plaintiff asserted Schlosstein was required to take plaintiff to HSU. *Id.* Addressing Beier's finding that plaintiff could have made an HSR or asked to see a nurse at any time, plaintiff explained that due to being restricted housing and often incoherent he was unable to communicate that he needed medical services. *Id.* Plaintiff also explained that he filed the HSR after he filed his inmate complaint because he wanted to "'Record Attempt to Show/Report Injuries Filed in ICE Complaint,'" to provide "a Federal Judge opportunity to draw its own conclusion." *Id.* The appeal was denied on July 16, 2018 because it was determined that "the institution appropriately addressed the complaint." *Id.* at 9.

### *B. Facts of the Case*

#### 1. Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding the motion for summary judgment, I resolve all factual disputes and make all reasonable factual inferences in favor of the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008).

### 2. Exhaustion of Administrative Remedies as to Angela Thompson, Dr. Tannen, and Dr. Ibirogba

The Prison Litigation Reform Act provides in part that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being brought into court, and it produces a "useful administrative record" for the district court to rely on. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also provides prompt notice to prison officials, *Smith v. Zachary,* 255 F.3d 446, 450 (7th Cir 2001), and promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89.

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "It is well established that 'a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits.'" *Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).

The prison grievance system applicable here is Wisconsin's Inmate Complaint Review System ("ICRS"). Wis. Admin. Code § DOC 310.04. Under the ICRS, an inmate must file a complaint with the Inmate Complaint Examiner ("ICE") within 14 calendar days

after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.07(2). The ICE then recommends action to a reviewing authority, who may dismiss or affirm the complaint. Wis. Admin. Code § DOC 310.11, 310.12. If an inmate is unsatisfied with the outcome, he must appeal the decision with the Corrections Complaint Examiner ("CCE") within 14 calendar days. Wis. Admin. Code § DOC 310.12(1). The CCE then recommends a decision to the DOC Secretary, who adopts or rejects the recommendation. Wis. Admin. Code § DOC 310.12(9).

There is no question that plaintiff's only relevant inmate complaint, RGCI-2018-13119, went through all the required steps. Instead, the question is which defendants are covered by plaintiff's inmate complaint. Defendants argue that Angela Thompson, Dr. Tannen, and Dr. Ibirogba are not covered, and because plaintiff did not file subsequent inmate complaints specifically addressing their actions, he failed to exhaust his administrative remedies against them.

Defendants are correct. While it does appear from the record that Angela Thompson may have had some involvement in the May 26 incident prior to plaintiff filing his inmate complaint, nowhere in the complaint itself does he mention her actions or lack thereof. Plaintiff's complaint alleges that "the Unit Sergeant, arresting staff, or Captain" were obligated to report his injuries to HSU and failed to do so. ECF no.63-1 at 12. As a result, the ICE investigated the actions only of the unit staff on duty that day, particularly Captain Schlosstein. Angela Thompson clearly was not a subject of plaintiff's inmate complaint.

Drs. Tannen and Ibirogba could not be the subject of plaintiff's inmate complaint. Plaintiff's complaint was submitted on June 14, 2018 and it was received on June 18,

11

2018. It is undisputed that plaintiff did not have an appointment set up with HSU until after he filed his HSR on June 19, 2018, did not see Dr. Ibirogba until July 12, 2018, and did not see Dr. Tannen until October 10, 2018. The record also shows that plaintiff did not file any other inmate complaints after June 18, 2018. *See* ECF no. 63-1 at 1. Plaintiff argues that Thompson, Dr. Tannen, and Dr. Ibirogba were aware or should have been aware that he filed his inmate complaint, which satisfies the exhaustion requirement because it put them on notice. Even if these defendants were aware of plaintiff's inmate complaint, the complaint still does not address their specific actions. As such, it fails to give these defendants notice and cannot satisfy the exhaustion requirement. Because there is no evidence that plaintiff filed inmate complaints against defendants Thompson, Dr. Tannen, and Dr. Ibirogba for their actions in handling his injuries from May 26, 2018, plaintiff failed to exhaust his administrative remedies. Summary judgment is granted in their favor.

### 3. Deliberate Indifference to Medical Needs as to Burkhead and Schlosstein.

Prison officials' actions violate the Eighth Amendment when they are deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

"A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). The

12

condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

To establish whether a prison official is deliberately indifferent, a plaintiff must show that an official actually knew of and disregarded a substantial risk of harm. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Additionally, a plaintiff must demonstrate that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment*." Stallings v. Liping Zhang*, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). Such departures include a prison official failing to do anything to address the serious medical need. *See Gayton*, 593 F.3d at 623-624 (reversing summary judgment in favor of a nurse who refused to examine or treat a vomiting inmate). They also include situations where an official unnecessarily delays necessary treatment, aggravating a condition or needlessly prolonging a plaintiff's pain. *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012).

Defendants assert that Burkhead, though working on plaintiff's unit on May 26, 2018, did not have duties that required him to conduct security rounds and that he was not aware of a fight or plaintiff's injuries. ECF no. 59 at ¶¶ 3-4. Plaintiff disputes this, and cites to a declaration of a prison official describing what happened at the Sergeants' desk that afternoon as proof that Burkhead knew about his injuries and failed to report them to HSU. However, plaintiff cites to David Johannes' declaration, rather than to Burkhead's. There is no other evidence in the record showing that Burkhead had any knowledge of the events of May 26. Thus, even reading the facts in the light most favorable to the

13

plaintiff, no reasonable factfinder could conclude that defendant Burkhead actually knew about plaintiff's head injury. Summary judgment is granted in Burkhead's favor.

However, there is a material question of fact as to whether Schlosstein actually knew that plaintiff suffered from a serious medical condition and then intentionally disregarded plaintiff's need for medical attention. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Seventh Circuit held in *Murphy v. Walker* that "[a]n injury to the head unless obviously superficial should ordinarily be considered serious and merits attention until properly diagnosed as to severity." 51 F.3d 714, 719 (7th Cir. 1995). Further, a head injury causing "prolonged pain and discomfort mandates medical evaluation within a reasonable period of time." *Id.* Without defining 'prolonged,' the court opined that such injuries "should be treated within a matter of minutes or hours rather than after several days, weeks, or months." *Id.* at 719 n. 12.

It is undisputed that Schlosstein knew plaintiff had a head injury: specifically, a contusion on the right side on the back of his head and a small contusion behind his ear. It is also undisputed that Schlosstein did not seek medical attention for plaintiff. What is disputed is the severity of plaintiff's head injury. Schlosstein argues that plaintiff's injury was obviously superficial. In Schlosstein's view, plaintiff was able to walk on his own and had no trouble speaking. From these perceptions, Schlosstein decided that taking plaintiff to the HSU was unnecessary and instead left it up to the plaintiff to decide if he wanted to go. Schlosstein suggests that plaintiff declined to go to the HSU several times because he did not want to get in trouble for fighting. Defendants also highlight that plaintiff did not submit an HSR until after he filed his inmate complaint.

14

Plaintiff maintains that his head injury was serious. Plaintiff states he was drifting in and out of consciousness, and that Schlosstein witnessed this when he placed plaintiff on the mat in the RHU cell. Plaintiff also states he had a swollen lump on the side of his head, his movement was unsteady, and he felt the effects of the head injury for at least four days after. Regarding his alleged refusals of medical treatment, plaintiff asserts that because of his head injury, which left him "incoherent", he was in no state to make such a decision. ECF no. 63-1 at 15.

Thus, there is a material question of fact as to whether plaintiff suffered from an obvious risk that Schlosstein intentionally ignored, and this question hinges on whose version of the injury is more credible. Even the ICE noted that the issue in this case "is reduced to one person's word against the other's." ECF no. 63-1 at 2. Reading the facts in a light most favorable to plaintiff, a reasonable factfinder could conclude that plaintiff suffered from a serious head injury, including periodic bouts of unconsciousness, requiring immediate medical attention, and Schlosstein, by failing to contact a medical professional, was deliberately indifferent.

### 4. Qualified Immunity

Schlosstein argues that even if I find a question of material fact, I should nevertheless grant summary judgment in his favor because he is entitled to qualified immunity for claims brought under 42 U.S.C. § 1983. To determine whether qualified immunity applies, I must consider "(1) whether the defendants violated a constitutional right, and (2) whether the constitutional right was clearly established." *Broadfield v. McGrath*, 737 Fed. Appx. 773, 775 (7th Cir. 2018). Clearly established "means that, at the time of the [prison official's] conduct, the law was sufficiently clear that every

15

reasonable official would understand that what he is doing is unlawful." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2017) (citations and internal quotations omitted).

As discussed above, I have already determined that a reasonable jury could find Schlosstein violated plaintiff's constitutional rights when he failed to get medical attention for his head injury on May 26, 2018. The only question remaining is whether, operating under the law as it existed in May 2018, a reasonable officer would have known that failing to get medical attention for an inmate's head injury would constitute deliberate indifference.

As cited above, the Seventh Circuit in *Murphy* held that head injuries, unless "obviously superficial," require medical evaluation "within a matter of minutes or hours," and failure by non-medical prison officials to ensure an inmate receives medical treatment for his head injury amounts to "'unnecessary and wanton infliction of pain' by 'intentionally denying or delaying access to medical care'" in violation of the Eighth Amendment *Murphy* at 719 & n. 12. (quoting *Estelle*, 429 U.S. at 104-105). Thus, the right was clearly established. While it is well-established that non-medical prison officials may avoid liability if they can show they were deferring to the judgment of medical professionals, they are not entitled to defer to the medical judgment of an inmate. Schlosstein effectively did nothing to address the plaintiff's medical needs. As such, Schlosstein is not entitled to qualified immunity and summary judgment is denied on the Eighth Amendment deliberate indifference claim against him.

Because one of plaintiff's claims has survived summary judgment, I will recruit counsel to represent him. Once I have found an attorney willing to represent him, I will provide plaintiff with an agreement, which he can sign if he agrees to accept

16

representation under the conditions I provide. Once counsel is on board, the court will set up a scheduling conference with the lawyers to discuss next steps.

### III. SUMMARY

Summary Judgment is granted in favor of all defendants except Brad Schlosstein. Angela Thompson, Dr. Tannen, and Dr. Ibirogba are dismissed because plaintiff failed to exhaust his administrative remedies on the claims against them. Bryan Burkhead is dismissed because no reasonable fact finder could conclude that he had actual knowledge of plaintiff's head injury. However, plaintiff's Eighth Amendment deliberate indifference to medical needs claim against Brad Schlosstein survives because there is a material question of fact as to whether Schlosstein actually knew plaintiff suffered from a head injury that was not obviously superficial and then failed to ensure plaintiff received medical attention.

### IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion to file injury photos (ECF no. 56) and plaintiff's motion to supplement (Docket No. 69) are **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (ECF no. 64) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant Dr. Adebola Ibirogba's motion for summary judgment (ECF no. 45) is **GRANTED.**

**IT IS FURTHER ORDERED** that defendants Bryan Burkhead, Brad Schlosstein, Angela Thompson, Dr. Dilip Tannan motion for summary judgment (ECF no. 57) is **GRANTED in part and DENIED in part.** The Eighth Amendment deliberate indifference to medical needs claim against Brad Schlosstein survives summary judgment.

**IT IS FURTHER ORDERED** that Bryan Burkhead, Angela Thompson, Dr. Dilip Tannan, and Dr. Adebola Ibirogba are **DISMISSED.**

**IT IS FURTHER ORDERED** that counsel will be recruited to represent plaintiff.

Dated in Milwaukee, Wisconsin this 28th day of August, 2020.

        s/Lynn Adelman
        Lynn Adelman
        United States District Judge